# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| HOLLY HENDRICKSON, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br> UNITEDHEALTH GROUP INC., UNITEDHEALTH GROUP EMPLOYEE BENEFITS PLANS ADMINISTRATIVE COMMITTEE, DAVID E. STRAUSS, and JOHN DOES 1–30, <br><br> Defendants. | Civil Action No.: 25-cv-02191 <br><br><br><br> **CLASS ACTION COMPLAINT** |

Plaintiff Holly Hendrickson ("Plaintiff"), by and through her attorneys, on behalf of the UnitedHealth Group 401(k) Savings Plan (the "Plan"), herself and all others similarly situated, state and allege as follows[1]:

## INTRODUCTION

1.     This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries, which include UnitedHealth Group Inc. ("UnitedHealth" or "Company"), the UnitedHealth Group Employee Benefits Plans Administrative

---

[1] Importantly, while the Plan is a legal entity that can sue and be sued, *see* ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1), in a breach of fiduciary duty action such as this and pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants. In short, the Plan is not a party to this action. Rather, this action is brought for the benefit of the Plan and its participants.

Committee ("Committee") and its members during the Class Period[2], and the individuals serving as "Plan Administrator" during the Class Period, including David E. Strauss, for breaches of their fiduciary duties.

2.      Plaintiff alleges that during the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA, 29 U.S.C. § 1002(21)(A), breached the duties they owed to the Plan and its participants including Plaintiff.

3.      As set forth herein, Defendants violated ERISA through their failing to "defray[] reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(A)(ii). Specifically, Defendants' failure stems from the use of Plan participant forfeited funds to reduce Company contributions to the Plan instead of using the funds to reduce or eliminate the amounts charged to Plan participants for Plan administrative expenses and costs.

4.      Defendants' mismanagement of the Plan – using forfeited funds to the Company's benefit rather than "for the exclusive purpose of providing benefits to participants and their beneficiaries" -- constitutes a breach of the fiduciary duty, including 29 U.S.C. § 1104(a)(A)(i).

5.      Due to Defendants' conduct, they violated ERISA in multiple ways. As set forth below, Defendants: (i) breached ERISA's fiduciary duty of prudence (Count I); (ii) breached ERISA's fiduciary duty of loyalty (Count II); (iii) breached ERISA's Anti-Inurement provision (Count III); (iv) failed in their duty to monitor certain of the Plan's fiduciaries (Count IV); and (v) violated ERISA's prohibition on self-dealing (Count V).

---

[2] The Class Period is defined as six years preceding the filing of this Action through the date of judgment ("Class Period").

6.    Defendants' actions were contrary to actions of a reasonable fiduciary in like circumstances and cost the Plan and its participants millions of dollars.

## SUMMARY OF CLAIMS

7.    Plaintiff brings this action as a nationwide class action to recover damages suffered due to Defendants' breaches of their fiduciary duties.

8.    Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time during the Class Period.

9.    Plaintiff alleges on behalf of the Class that Defendants violated ERISA by failing to act with an eye towards the interests of the Plan's participants and beneficiaries. As set forth herein, rather than act in the best interests of the Plan's participants and beneficiaries, Defendants in their fiduciary capacity acted in the interests of the Company by using funds from forfeited accounts to defray the Company's costs instead of using such funds to reduce the Plan's administrative expenses and thus lower the expenses and costs to the Plan's participants and beneficiaries.

10.    Notably, this was done when the Company was experiencing sustained growth in its revenue and thus a prudent fiduciary in like circumstances would have defrayed expenses to the Plan's participants rather than defray costs to the employer.

11.    Plaintiff asserts that Defendants' conduct concerns the Plan's management and operation -- and does not concern the design, establishment, or modification of an

employee benefit plan. Stated another way, the conduct complained of herein concerns Defendants' conduct as the Plan's fiduciaries and not as the Plan's settlor.

12.     Defendants exercised discretion and control over Plan assets and thus were making decisions of Plan administration rather than Plan design when they chose to exercise discretion in the use of forfeited funds for the benefit of the Company through reducing employer contributions rather than solely in the interest of the participants and beneficiaries through the use such funds to reduce Plan expenses.

## PARTIES

**PLAINTIFF**

13.     Plaintiff Holly Hendrickson ("Plaintiff") resides in the State of Colorado. Plaintiff is a participant in the Plan. As such, Plaintiff has standing to bring this action on behalf of the Plan because she participated in the Plan and was injured by Defendants' unlawful conduct.

14.     Plaintiff did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**DEFENDANTS**

*Company Defendant*

15.     The UnitedHealth Group Inc. ("UnitedHealth" or the "Company") is the Plan sponsor and, upon information and belief, a named fiduciary for the Plan.

16.     According to a recent press release from the Company, "UnitedHealth Group (NYSE: UNH) is a health care and well-being company with . . . two distinct and

complementary businesses. Optum delivers care aided by technology and data," while "UnitedHealthcare offers a full range of health benefits, enabling affordable coverage, simplifying the health care experience and delivering access to high-quality care." *See* https://www.unitedhealthgroup.com/content/dam/UHG/PDF/ investors/2024/2025-16-01-uhg-reports-fourth-quarter-results.pdf (last visited April 22, 2025) ("January 16, 2025 Press Release").

17.    According to the most recent Form 5500, the "UnitedHealth Group Employee Benefits Plans Administrative Committee ('Plan Administrator') is responsible for oversight of the Plan, except with respect to investment matters."[3] *See* Form 5500 for calendar year ending December 31, 2023, filed with the Department of the Treasury, ("2023 Form 5500"), Notes to the Financial Statements, at p. 6.

18.    Consequently, upon information and belief, the Company appointed individuals to serve on this administrative committee (the "Committee"). Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

---

[3] Per the 2023 Form 5500, the "UnitedHealth Group Employee Benefits Plans Investment Committee ('Investment Committee') determines the appropriateness of the Plan's investment offerings and monitors investment performance." *See* 2023 Form 5500, Notes to the Financial Statements, at p. 6. Should discovery reveal that the Investment Committee has any liability for the claims at issue, Plaintiff will seek leave to amend to add that committee, and its members, as defendants to the instant action.

19.   Accordingly, UnitedHealth during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) because it had a duty to monitor the actions of the Committee.

20.   For the foregoing reasons, the Company is a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

*Committee Defendants*

21.   As discussed above, upon information and belief, the Company appointed the Committee to, among other things, serve as the "Plan Administrator."[4]

22.   Moreover, the Committee "is responsible for oversight of the Plan . . ." *See* 2023 Form 5500, Notes to the Financial Statements, at p. 6.

23.   In addition, as set forth in the Plan's Summary Plan Description ("SPD"), the "Plan is administered by the Plan Administrator", which is "responsible for overseeing the administration of the Plan." *See* SPD, at p. 29.

24.   Importantly, the "Plan Administrator has the complete discretion and authority to interpret the terms of the Plan" and, in performing these duties, "may rely on information furnished by . . . the Company . . ." *Id.*

25.   For the foregoing reasons, the Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

---

[4] Accordingly, the term "Committee" and "Plan Administrator" are used interchangeably herein.

26.     The Committee and the unnamed members of the Committee during the Class Period are collectively referred to herein as the "Committee Defendants."

27.     David E. Strauss was identified as the "Plan Administrator" according to the 2023 Form 5500.

28.     Based on a review of the relevant Form 5500s during the Class Period, it appears Mr. Strauss signed each of them as "Plan Administrator."

### *Additional John Doe Defendants*

29.     To the extent that there are additional officers, employees and/or contractors of UnitedHealth who are/were fiduciaries of the Plan during the Class Period, the identities of whom are currently unknown to Plaintiff, Plaintiff reserves the right, once their identities are ascertained, to seek leave to join them to the instant action. Thus, without limitation, unknown "John Doe" Defendants 1–10 include, but are not limited to, Committee members, Plan Administrators, and/or UnitedHealth officers, employees and/or contractors who are/were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) during the Class Period.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq.*

31.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.[5]

32.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district.

## FACTUAL ALLEGATIONS

**ERISA'S OBLIGATIONS**

33.     To safeguard Plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries.

34.     "ERISA requires a 'fiduciary' to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Varity Corp. v. Howe,* 516 U.S. 489, 506 (1996) (quoting ERISA § 404(a), 29 U.S.C. § 1104(a)(1)).

35.     The Supreme Court has held that "ERISA plan fiduciaries must discharge their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Hughes v. Northwestern Univ.*, 595 U.S. 170, 172 (2022) (quoting 29 U.S.C. §1104(a)(1)(B)).

---

[5] Indeed, per the SPD, Plan participants are advised that "any civil action related to the Plan (including, but not limited to, actions under ERISA, such as claims for . . . breach of fiduciary duty)" must be filed "in the United States District Court for the District of Minnesota." *See* SPD at 26.

36.     A fiduciary's duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F. 2d 263, 272 n.8 (2d Cir. 1982). Further, a fiduciary's duties are "derived from the common law of trusts" which, consequently, requires courts to "look to the law of trusts." *Tibble v. Edison Int'l,* 575 U.S. 523, 528–29 (2015).

37.     Importantly, a fiduciary must discharge their duties "in accordance with the documents and instruments governing the plan" only "insofar as such documents and instruments are consistent with the provisions" of ERISA's duty of prudence. 29 U.S.C. §1104(a)(1)(D).

38.     As set forth herein, Defendants breached these well-established fiduciary duties.

**PLAINTIFF**

39.     Plaintiff is a participant in the Plan. As a Plan participant, Plaintiff was required to pay fees associated with her Plan account.

40.     As such, Plaintiff suffered injury because Defendants failed to use forfeited Plan funds to pay Plan administrative expenses, which would have reduced or eliminated the amounts charged to Plaintiff's individual account.

**THE PLAN**

41.     The purpose of the Plan is "to help [employees] save for [their] retirement." *See* SPD at 3.

42.     The Plan is a "defined contribution" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). *See* SPD at 26.

43.    In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund that is separate from UnitedHealth's assets.

44.    According to the "Statement of Changes in Net Assets Available for Benefits", for the year ended December 31, 2023, the Plan had over $22.4 billion in net assets available for benefits to the Plan's participants. *See* 2023 Form 5500.

45.    In general, employees are automatically enrolled in the Plan at a pretax contribution rate of 3%. This automatic deduction normally begins no later than the earlier of the pay date for the second payroll period after notice of automatic enrollment is provided or the first pay date that occurs at least 30 days after the notice of automatic enrollment is provided. *See* SPD at 4.

46.    Pretax contributions automatically increase by 1% each year until the pretax contribution reaches 6%. *Id.*

47.    Employees may contribute up to 80% of their pay per pay period. *See* SPD at 5.

48.    The Company matches employee contributions at 100%, for the first 3% of an employee's pay and then at a 50% rate for each dollar thereafter up to 6% of an employee's pay. Thus, if an employee contributed 6% of their pay each payroll cycle, the Company's matching contribution would equal 4.5% of the employee's pay. *See* SPD at 7.

49.    Employees are fully vested in their contributions at all times and, typically, become fully vested in the Company matching contributions after completing two years of service. *See* SPD at 11.

50.     Thus, if a Plan participant leaves the Company's employ prior to completing two years of service, they will forfeit any unvested matching contributions made by the Company to their account.

**FORFEITED ACCOUNTS**

51.     According to the Plan's SPD, "[a]ny forfeitures that arise under the Plan may be used to restore forfeited accounts, to satisfy the [Company's] matching contributions obligations, or to offset the Plan's administrative expenses." *See* SPD at 28.

52.     Indeed, per the 2023 Form 5500, "Forfeitures can be used to reduce future employer contributions or to pay certain administrative expenses. During the year ended December 31, 2023, employer contributions were reduced by $5,514,378 from forfeiture accounts."

53.     Similar language was contained in each Form 5500 during the Class Period.

54.     For example, 2022's Form 5500 stated: "Forfeitures can be used to reduce future employer contributions or to pay certain administrative expenses. During the year ended December 31, 2022, employer contributions were reduced by $3,902,685 from forfeiture accounts." *See* Form 5500 for calendar year ending December 31, 2022, filed with the Department of the Treasury, ("2022 Form 5500").

55.     Similarly, 2021's Form 5500 stated: "Forfeitures can be used to reduce future employer contributions or to pay certain administrative expenses. During the year ended December 31, 2021, employer contributions were reduced by $4,008,467 from forfeiture accounts." *See* Form 5500 for calendar year ending December 31, 2021, filed with the Department of the Treasury, ("2021 Form 5500").

56.     Likewise, 2020's Form 5500 stated: "Forfeitures can be used to reduce future employer contributions or to pay certain administrative expenses. During the year ended December 31, 2020, employer contributions were reduced by $2,683,911 from forfeiture accounts." *See* Form 5500 for calendar year ending December 31, 2020, filed with the Department of the Treasury, ("2020 Form 5500").

57.     The 2019 Form 5500 stated: "Forfeitures can be used to reduce future employer contributions or to pay certain administrative expenses. During the year ended December 31, 2019, employer contributions were reduced by $3,223,568 from forfeiture accounts." *See* Form 5500 for calendar year ending December 31, 2019, filed with the Department of the Treasury, ("2019 Form 5500").

58.     All told, based on available information provided in the Form 5500s, between 2019 and 2023, over $19.3 million in forfeited funds were used to reduce Company matching contributions.

59.     The use of the forfeited funds in this manner presented Defendants with a clear conflict of interest.

60.     Using forfeitures to reduce the cost of the Company's contributions to the Plan would save, and has saved, the Defendants millions of dollars.

61.     Yet, so long as there is no risk that UnitedHealth would be otherwise unable to financially satisfy its contribution obligations to the Plan, such a use of forfeitures would be solely in the best interest of UnitedHealth.

62.    Conversely, using forfeitures to pay Plan expenses would almost always inure to the benefit of the Plan participants, by reducing or eliminating the amounts charged to their individual accounts to otherwise cover those expenses.

63.    Indeed, based on the Form 5500s for the relevant years during the Class Period, there was at least $6 million in "Administrative expenses" for each year. All told, for the period 2019 through 2023, the Plan's "Administrative expenses" totaled some $32,610,000.00.

64.    Upon information and belief, despite both the clear conflict of interest faced by Defendants and their legal fiduciary duty, Defendants failed to make any real effort to resolve that conflict of interest in a manner that would best serve the interests of the Plan participants.

65.    Indeed, Defendants abdicated their duty of prudence by failing to undertake any type investigation into which use of the forfeited funds was in the best interest of the Plan participants.

66.    Nor did Defendants engage any independent consultant to advise them on the best course of action for allocating forfeitures, as a prudent person would have.

67.    While ERISA requires Defendants to defray the Plan's expenses, 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Plan permits Defendants to use forfeitures to pay Plan expenses, Defendants, upon information and belief, failed to use any forfeitures for that purpose throughout the Class Period.

68.     Instead, Defendants used the forfeitures to offset UnitedHealth's matching contribution obligations to the Plan, despite there being no risk that UnitedHealth would be unable to otherwise financially satisfy its contribution obligations to the Plan.

**THE COMPANY'S FINANCIAL PERFORMANCE**

69.     During the Class Period, the Company experienced significant financial performance including sustained revenue growth.

70.     For example, in the January 16, 2025 Press Release, UnitedHealth touted that its "2024 revenues grew $28.7 billion or 8% year-over-year to $400.3 billion, driven primarily by serving people more comprehensively across the enterprise."

71.     In the same press release, the Company disclosed that 2024's full year earnings from operations were $32.3 billion and that the Company "returned over $16 billion to shareholders through dividends and share repurchases."

72.     In 2023, the Company's revenues grew $47.5 billion or 14.6% year-over-year, with the Company returning $14.8 billion to shareholders through dividends and share repurchases.  *See*  https://www.unitedhealthgroup.com/content/dam/UHG/PDF/investors/2023/UNH-Q4-2023-Release.pdf (last visited April 22, 2025).

73.     In 2022, the Company's revenues grew $36.6 billion or 13% year-over-year, with the Company returning $13 billion to shareholders through dividends and share repurchases. *See* https://www.sec.gov/Archives/edgar/data/731766/000073176623000003/a2022q4exhibit991.htm (last visited April 22, 2025).

74.     Indeed, UnitedHealth's annual revenue increased every year from 2009 through 2024, with at least double-digit revenue growth between 2021 and 2022 and

between 2022 and 2023. *See* https://www.macrotrends.net/stocks/charts/UNH/united health-group/revenue (last visited April 22, 2025).

75.    Thus, during the years of the putative class period, UnitedHealth had sufficient cash and equivalents on hand to satisfy its contribution obligations to the Plan.

76.    Yet, despite this significant financial performance, Defendants consistently acted solely in their own self-interest, and in violation of their fiduciary duty to the Plan participants, by improperly using Plan forfeitures solely to reduce the Company's matching contributions to the Plan.

77.    By using forfeitures during the Class Period exclusively to benefit UnitedHealth by reducing its Plan contributions, Defendants failed in their fiduciary duty to Plan participants by causing deductions from their individual accounts to cover expenses that otherwise could have been covered by forfeitures.

78.    In contrast, given the Company's significant financial performance, a prudent fiduciary in like circumstances would have defrayed expenses to the Plan's participants rather than defray costs to the employer.

79.    Defendants, at their own discretion, effectively placed their own interests above the interests of the Plan and its participants and caused harm to the Plan and its participants by reducing Plan assets, not allocating forfeited funds to Plan participants' accounts, and also caused Plan participants to incur millions in expenses that could otherwise have been covered in whole or in part by forfeited funds.

**DEFENDANTS' BREACH OF FIDUCIARY DUTY**

80.    Plaintiff asserts that Defendants violated their fiduciary duties through their decisions regarding how to apply forfeited contributions after the underlying contributions that comprised the forfeited contributions were paid to the Plan and, thus, had become Plan assets.

81.    Defendants breached their fiduciary duties of loyalty and prudence when they chose to allocate forfeited amounts to reduce employer contributions rather than to pay administrative expenses given the circumstances of the Company during the relevant time period.

82.    Specifically, as noted above, the Company was experiencing significant revenue generation. Thus, Defendants breached their fiduciary duties to the Plan and its participants by choosing, in their discretion, to reduce the Company's obligations rather than reduce the Plan's expenses.

83.    Indeed, upon information and belief, Defendants ignored the significant revenue generation of the Company and instead automatically chose to utilize forfeited amounts to reduce employer contributions.

84.    A prudent fiduciary in this particular context would have at minimum engaged in a reasoned and impartial decision-making process considering all relevant factors before determining how to use the forfeited funds in the best interest of the participants and beneficiaries. Defendants, upon information and belief, did not do this.

85.    Rather, Defendants simply chose to benefit the Company only by using forfeited funds to reduce the Company's obligations regarding its matching contribution obligation.

86.    This conduct constituted a breach of ERISA's duty of prudence and loyalty.

87.    In short, the Company received a benefit amounting to millions of dollars in contribution expenses by electing to use Plan assets as a substitute for the Company's own future contributions to the plan.

88.    Plaintiff, and the other members of the Class, are entitled to receive benefits in the amount of the difference between the value of their account currently, or as of the time their account was distributed, and what their account would have been worth but for Defendants' breaches of fiduciary duties as described herein.

## CLASS ACTION ALLEGATIONS

89.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following proposed class ("Class"):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time from six years preceding the filing of this Complaint through the date of judgment (the "Class Period").

90.    The members of the Class are so numerous that joinder of all members is impractical. For example, the 2023 Form 5500 indicates that there are over 266,000 Plan participants at year's end.

91.    There are questions of law and fact common to the class because Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the

actions alleged herein with respect to the Plan and not as to any individual. Such common questions include whether Defendants breached their fiduciary duties to the Plan by allocating Plan assets in a manner that benefited UnitedHealth while harming Plaintiff and the Plan participants.

92.     The claims of Plaintiff are typical of the claims of the Class she seeks to represent. Plaintiff and the members of the Class participated in the Plan and suffered injuries as a result of the same alleged misconduct by Defendants.

93.     Plaintiff's claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

94.     Common questions of law and fact exist as to the Class that predominate over any individual questions and include, but are not limited to, the following:

      a) Whether Defendants are/were fiduciaries of the Plan;

      b) Whether Defendants breached their fiduciary duties of loyalty and prudence by engaging in the conduct described herein;

      c) The proper form of equitable and injunctive relief; and

      d) The proper measure of monetary relief.

95.     Plaintiff will fairly and adequately protect the interests of the Class as her interests are aligned with those of the members of the Class. Plaintiff has no interests adverse to the Class she seeks to represent and has retained competent and experienced counsel.

96.     This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

97.     In the alternative, certification under Rule 23(b)(3) is warranted, as no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

## COUNT I
## BREACHES OF FIDUCIARY DUTY OF PRUDENCE
### (Asserted against all Defendants)

98.     Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

99.     At all relevant times during the Class Period, the Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

100.     As fiduciaries of the Plan, the Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included

managing the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

101.    The Defendants breached these fiduciary duties by failing to act solely in the best interest of the Plan participants regarding the use of the Plan's forfeiture accounts.

102.    The failure to engage in an appropriate and prudent process resulted in Plan participants incurring otherwise avoidable Plan administration costs.

103.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan and its participants suffered millions of dollars of losses due to the failure to utilize forfeited accounts to pay Plan expenses. Had the Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

104.    In making their decision regarding forfeitures, Defendants were motivated primarily by their own self-interest, and not that of the Plan's participants and beneficiaries.

105.    The Defendants knowingly participated in each breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge their own fiduciary duties, and knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the breaches of all other Defendants pursuant to 29 U.S.C. § 1105(a).

## COUNT II
### BREACH OF FIDUCIARY DUTY OF LOYALTY
### (Asserted against all Defendants)

106.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

107.    At all relevant times during the Class Period, the Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

108.    As fiduciaries of the Plan, these Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

109.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), these Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

110.    Defendants have continually breached their duty of loyalty to the Plan and its participants by utilizing forfeited funds for the benefit of the Company instead of in the sole interest of the Plan and its participants and beneficiaries.

111.    Defendants used these Plan assets for the purpose of reducing the Company's own contributions to the Plan, thereby saving the Company millions of dollars each year at the expense of the Plan. Due to Defendants use of forfeited funds to decrease Company matching contributions, the Plan and its participants and beneficiaries incurred otherwise avoidable Plan expense deductions to their individual accounts.

112.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses.

113.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiff is entitled to equitable relief and other appropriate relief as deemed just and proper by the Court.

114.    Further, each Defendant is also liable for the breaches of all other Defendants pursuant to 29 U.S.C. § 1105(a).

## COUNT III
### BREACH OF ERISA'S ANTI-INUREMENT PROVISION
### (Asserted against UnitedHealth)

115.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

116.    Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

117.    Because all the Plan's forfeited funds are initially placed in the Plan's trust, these forfeited funds are Plan assets.

118.    The Company's use of the forfeited funds to defray its own contributions to the Plan in order to save itself millions of dollars in funds that the Company would otherwise have to contribute to the Plan, caused the assets of the Plan to inure to the benefit of the Company in violation of 29 U.S.C. § 1103(c)(1).

22

119.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), UnitedHealth is liable to restore to the Plan all losses caused by its breaches of ERISA's anti-inurement provision, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

120.    UnitedHealth is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT IV
### FAILURE TO ADEQUATELY MONITOR OTHER FIDUCIARIES
#### (Asserted against UnitedHealth)

121.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

122.    UnitedHealth, upon information and belief, had the authority to appoint and remove members of the Committee, and the duty to monitor the Committee and was aware that the Committee Defendants had critical responsibilities as fiduciaries of the Plan.

123.    In light of this authority, UnitedHealth had a duty to monitor the Committee Defendants to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that they were not fulfilling those duties.

124.    UnitedHealth also had a duty to ensure that the Committee Defendants possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; maintained adequate records of the information on

which they based their decisions and analysis with respect to the Plan; and reported regularly to UnitedHealth.

125.    UnitedHealth breached its fiduciary monitoring duties by, among other things:

a)    Failing to monitor and evaluate the performance of the Committee Defendants or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Committee Defendants' imprudent actions and omissions; and

b)    failing to remove Committee members whose performance was inadequate in that they continued to engage in conduct that benefited the Company, to the detriment of the Plan and Plan participants' retirement savings.

126.    As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars of losses. Had the Defendants complied with their fiduciary obligations to monitor other Defendants that they appointed, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

## COUNT V
### SELF-DEALING
### (Asserted against all Defendants)

127.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

24

128.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

129.    Defendants violated this prohibition by choosing to substitute Plan assets for the Company's own contributions owed to the Plan, thereby saving UnitedHealth millions of dollars in contribution costs.

130.    Defendants, therefore, dealt with the Plan assets in their own interest and for their own account.

131.    As a result of their self-dealing, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer contributions owing to the Plan, as well as all lost investment returns on those assets.

132.    Defendants are each personally liable under 29 U.S.C. § 1109(a) to restore to the Plan all assets and profits obtained through the use of Plan assets, and are each subject to other equitable or remedial relief as appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Class respectfully requests the Court grant the following relief:

A.    Designation of this action as a class action on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(1), or in the alternative, Fed. R. Civ. P. 23(b)(2);

B.    Designation of Plaintiff as representative of the Class;

C.    Designation of Plaintiff's counsel as class counsel for the Class;

D.      A declaratory judgment that the practices complained of herein are unlawful under ERISA;

E.      A Declaration that the Defendants, and each of them, have breached their fiduciary duties under ERISA;

F.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

G.      An order requiring the Company Defendants to disgorge all assets and profits secured by Defendants as a result of each violation of ERISA;

H.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

I.      An injunction against Defendants from engaging in each of the unlawful practices, policies and patterns set forth herein;

J.      An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

K.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan's fiduciaries deemed to have breached their fiduciary duties;

L.      An award of pre-judgment interest;

M.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Class pursuant to 29 U.S.C. § 1132(g); and

N.    Such other and further relief as this Court deems just and proper.

Dated: May 21, 2025                         Respectfully submitted,

                                            */s/ June P. Hoidal*

                                            **ZIMMERMAN REED LLP**
                                            June P. Hoidal (033330x)
                                            Charles R. Toomajian (0397879)
                                            1100 IDS Center
                                            80 South 8th Street
                                            Minneapolis, MN 55402
                                            Tel: (612) 341-0400
                                            Fax: (612) 341-0844
                                            June.Hoidal@zimmreed.com
                                            Charles.Toomajian@zimmreed.com

                                            **LYNCH CARPENTER, LLP**
                                            Gerald D. Wells, III*
                                            Stephen E. Connolly*
                                            1133 Penn Avenue, 5th Floor
                                            Pittsburgh, PA 15222
                                            Tel: (412) 322-9243
                                            Fax: (412) 231-0246
                                            jerry@lcllp.com
                                            steve@lcllp.com

                                            *Attorneys for Plaintiff and the
                                            Proposed Class*

                                            **pro hac vice forthcoming*